# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| MARK GORE,<br>    No. 94167, | ) ) ) | |
|     Plaintiff, | ) ) | No. 3:17-cv-01082<br>CHIEF JUDGE CRENSHAW |
| v. | ) ) | |
| CORE CIVIC INC., *et al.*, | ) ) | |
|     Defendants. | ) | |

## MEMORANDUM

Mark Gore is an inmate of the Metro-Davidson County Detention Facility in Nashville, Tennessee, brings this *pro se, in forma pauperis* action under 42 U.S.C. § 1983 against Core Civic Inc., f/n/u Rychen, Darrell Jones, f/n/u Hebron, f/n/u Carter, f/n/u Sowers, f/n/u Andrews, and Jane Doe, alleging violations of his federal civil and constitutional rights. (Doc. No. 1). As relief, the Plaintiff seeks compensatory and punitive damages and injunctive relief. (Id. at 13).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.    PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). Id. §

1

1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.     Section 1983 Standard

The Plaintiff brings his federal claims pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983,

a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

## III. Alleged Facts

The Plaintiff alleges that when he arrived at the Metro-Davidson County Detention Facility on July 12, 2016. Upon his arrival, the Plaintiff informed Jane Doe, the unidentified nurse in charge of inmate intake, of his medical condition and of the bottom bunk pass issued to him by the Criminal Justice Center where he was previously incarcerated.

On July 25, 2016, the Plaintiff was placed into Unit Kilo, Cell 222, top bunk. After the Plaintiff advised an unnamed corrections officer that he could not physically climb onto the top bunk, the corrections officer referred the Plaintiff to Program Counselor Hebron. Hebron told the Plaintiff that no bottom bunks were available at that time but that Hebron would move the Plaintiff when a bottom bunk became available. However, even though three bottom bunks became available on the following day, Hebron refused to move the Plaintiff. Later on the same day, the Plaintiff attempted to climb onto his top bunk. In doing so, the Plaintiff ripped his abdominal wall, making his hernia "significantly" worse and "severely [sic] hurting" himself. (Doc. No. 1 at 9).

The Plaintiff then told Captain Carter what had happened, and she told the Plaintiff "she would take care of it before lock down." (Id.) At lock down when Carter had not returned, the Plaintiff refused to return to his cell and asked to speak with Carter. The Plaintiff was sent to the sally port to wait on Carter. At 10:30 p.m., Sergeant Sowers came to the sally port instead of Carter and told the Plaintiff that if he "did not go back to [his] cell [he] would be taken to punitive segregation." (Id.) The following day, Hebron moved the Plaintiff to a bottom bunk in another unit.

3

On August 1, 2016, Core Civic issued the Plaintiff a bottom bunk pass. On November 1, 2016, the Plaintiff was moved to a different unit, top bunk. The Plaintiff told Carter, who again did not take any action. The Plaintiff then spoke with Unit Manager Jones, who refused to move the Plaintiff.

On September 2, 2016, Health Services Administrator Andrews told the Plaintiff: "CCA does not honor CJC, CDM or any other outside facility bottom bunk pass." (Id. at 12).

On November 8, 2016, the Plaintiff went to the medical unit and was examined by Ms. Cook. She "called the count room and told them to move [the Plaintiff] to Lima 232, bottom bunk." (Id. at 10). However, Jones did not permit the move.

In the meantime, the Plaintiff obtained a plastic chair and used it to climb up to and down from the top bunk. On November 9, 2016, Assistant Warden Rychen and Jones performed a visual inspection of the Plaintiff's cell and removed the plastic chair. The Plaintiff asked how he was supposed to get in and out of the top bunk, and Jones replied that "he didn't know but not w/ this chair." (Id.) Later, when the Plaintiff asked to be moved to a bottom bunk, Jones told the Plaintiff: "Don't tell me where to move you." (Id. at 11).

After speaking with Bobby Aylward, a quality assurance manager at the facility, Aylward "got on his radio and told the count room to move [the Plaintiff] to Lima 232 bottom bunk." (Id.) However, Jones told Aylward, "You do yours and I'll do mine." (Id.) Later that day, after Aylward spoke with Jones again, the Plaintiff was moved to Lima 232, bottom bunk.

The complaint alleges that the Plaintiff's abdominal injuries and hernias worsened after he was forced to sleep on the top bunk of Lima 213. (Id.)

**IV.     Analysis**

4

### A. Jane Doe

The complaint names Jane Doe, the as-yet identified nurse who completed the Plaintiff's intake at the Metro-Davidson County Detention Facility on or "shortly thereafter" July 12, 2016. (Doc. No. 1 at 8). The Plaintiff cannot pursue any claims for actions or inactions that fall outside of the governing statute of limitations period. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claims arises." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provisions found in Tennessee Code Annotated § 28-3-104(a). Porter v. Brown, 289 Fed. Appx. 114, 116 (6th Cir. 2008).

The complaint was signed on July 21, 2017. (Doc. No. 1 at 14). Thus, all § 1983 claims arising from events that occurred prior to July 22, 2016, are time barred under the governing one-year statute of limitations. The Plaintiff cannot pursue any § 1983 claims against Jane Doe because the events giving rise to the Plaintiff's claims against Jane Doe occurred on or "shortly after" July 12, 2016. (Doc. No. 1 at 8).

However, even assuming that the statute of limitations does not bar the Plaintiff's claims against Jane Doe, the Plaintiff's claims would fail as a matter of law. The Sixth Circuit has analyzed similar claims about bunk assignments as Eighth Amendment claims of deliberate indifference. See Robbins v. Black, 351 Fed App'x 58, 61 (6th Cir. 2009) (treating failure to make a medically appropriate bunk assignment as a claim for deliberate indifference to a serious medical need). The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth

Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A claim of deliberate indifference under the Eighth Amendment has both an objective and subjective component. Rouster v. Cnty. of Saginaw, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id. The requisite intent is more than mere negligence and is more akin to recklessness. Id.

Because the complaint does not allege that Jane Doe acted with deliberate indifference to the Plaintiff's serious medical needs, even if the Plaintiff's claim against Jane Doe had been filed within the governing statute of limitations period, the claim would fail as a matter of law. The Plaintiff's claim against Jane Doe will be dismissed.

### B. Rychen, Jones, Hebron, Carter, Sowers, and Andrews

As the Court explained above, in order for the Plaintiff to state a claim under § 1983 bsaed on these Defendants' actions or inactions with regard to the Plaintiff's bunk assignment, the Plaintiff must allege that the Defendant was deliberately indifferent to a serious medical need of the Plaintiff. Here, the complaint alleges that the Plaintiff had a serious medical need requiring placement on a bottom bunk: the Plaintiff suffers from an abdominal hernia and, as a result, had been issued a bottom bunk pass by the previous facility where he was incarcerated. For purposes of the required PLRA screening, the Court will assume that the Plaintiff's described medical condition is sufficiently serious.

6

As to each Defendant's subjective state of mind in assigning Plaintiff to a top bunk or failing to arrange a reassignment of the Plaintiff to a bottom bunk, the complaint alleges that Defendants Rychen, Jones, Hebron, Carter, and Sowers were aware of the Plaintiff's serious medical need for a bottom bunk and disregarded that need on at least one occasion. The complaint further alleges that the Defendants' failure to ensure the Plaintiff was placed on a bottom bunk resulted in physical injuries to the Plaintiff. The Court finds that these allegations state non-frivolous Eighth Amendment deliberate indifference claims as to these Defendants. See e.g., Horton v. Corr. Corp. of Am., No. 98-5878, 1999 WL 623769, at *1 (6th Cir.1 Aug. 11, 1999) (affirming district court's finding that inmate's claim of deliberate indifference to his medical needs based on allegations that he was assigned to a top bunk, in spite of his back and hip problems, failed because inmate could have sought a bottom bunk pass from the prison doctor but objected to having to obtain such a pass due to the $3 fee for seeing the doctor); Babcock v. Roe, No. 97-2128, 1999 WL 96988, at *1 (6th Cir. Feb. 2, 1999)(affirming district court's finding that the failure to immediately assign inmate a lower bunk was the result of "bureaucratic inflexibility" rather than deliberate indifference to inmate's medical needs and "it was extremely doubtful" that inmate suffered an injury from fall off top bunk).

As to Defendant Andrews, however, the complaint alleges only that he informed the Plaintiff of Core Civic's policy regarding the honoring of bottom bunk passes issued by other facilities. Those allegations do not support a claim of deliberate indifference to the Plaintiff's serious medical needs by Defendant Andrews. Therefore, the Plaintiff's claims against Defendant Andrews will be dismissed.

    **C.**    **Core Civic Inc.**

As to Defendant Core Civic, "[a] private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." Thomas v. Coble, 55 F. App'x 748, 748 (6th Cir. 2003) (citing Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996)); see also Parsons v. Caruso, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons. Thomas, 55 F. App'x at 748–49; Street, 102 F.3d at 817–18; Johnson v. Corr. Corp. of Am., 26 F. App'x 386, 388 (6th Cir. 2001). Core Civic "cannot be held liable under a theory of respondeat superior." Braswell v. Corr. Corp. of Am., 419 F. App'x 622, 627 (6th Cir. 2011).

To prevail on a § 1983 claim against Core Civic, the Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. Id. Here, the complaint alleges that the Plaintiff suffered physical harm (abdominal tears and a worsening of his hernia) because of an unconstitutional policy and/or custom of Core Civic: Core Civic does not honor bottom bunk passes issued by other facilities and maintains a custom of permitting employees to determine whether and when an inmate receives a bottom bunk regardless of the inmate's disclosed medical needs. Were the Plaintiff facing a motion to dismiss, his burden of proof would be much higher. He would need to show that Core Civic had an unconstitutional policy or custom, that the policy or custom was applied in the Plaintiff's case, and the policy or custom was a "moving force" behind the denial of the Plaintiff's rights. See, e.g., Ezell v. Metro. Gov't of Nashville & Davidson Cnty., No. 3:11–0405, 2012 WL 2601940, at *8 (M.D. Tenn. June 6, 2012) (report and recommendation), adopted, 2012 WL 2601936 (M.D.Tenn. July 5, 2012); Moffat v. Mich. Dep't of Corr., No. 09–14696, 2010 WL 3906115, at *9 n.11 (E.D. Mich. May 21,

8

2010) (allegation that "CMS had a policy of denying treatment in order to maximize profits" insufficient to survive motion to dismiss without supporting factual allegations) (report and recommendation), adopted, 2010 WL 3905354 (E.D.Mich. Sept. 27, 2010); Crawford v. Mich. Dep't of Corr., No. 2:09–cv–7, 2010 WL 1424246, at *5 (W.D. Mich. Mar. 31, 2010) ("Plaintiff has pleaded no facts supporting his allegation that, pursuant to contract, Plaintiff's medical treatments were based upon cost concerns."); Broyles v. Corr. Med. Servs., Inc., No. 08–1638, 2009 WL 3154241 (6th Cir. Jan. 23, 2009) (inmate's "bare allegation of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief"). However, the Plaintiff is not facing a motion to dismiss at this time; the Court is conducting the required PLRA screening of the complaint, which is a lower burden for the Plaintiff to overcome in order for his claims to proceed.

The Court finds that the Plaintiff's allegations are sufficient to state an Eighth Amendment claim based on the Core Civic policy and/or customs described in the complaint. The complaint names five different Defendants who denied and/or ignored the Plaintiff's request to be placed in a bottom bunk for medical reasons on at least eight specific occasions as a result of Core Civic policies and/or customs. Further, the complaint alleges that the Plaintiff sustained physical injuries as a result of his attempt to crawl onto his top bunk. Of course, the Plaintiff will bear the burden of supporting his allegations with evidence as this case progresses. The Court simply finds that, for now, the Plaintiff's Eighth Amendment claims against Core Civic survive the required screening under the PLRA.

## V. Conclusion

In conclusion, the Court finds that the complaint states colorable Eighth Amendment claims pursuant to § 1983 against Defendants Core Civic, Rychen, Jones, Hebron, Carter, and Sowers. 28 U.S.C. § 1915A. These claims survive the required PLRA screening. However, the Plaintiff's remaining claims will be dismissed for failure to state a claim upon which relief can be granted and/or failure to pursue within the governing statute of limitations period.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE