IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARK GORE,                          )
                                    )
       Plaintiff,                   )
                                    )
v.                                  )    Case No. 3:17-cv-01082
                                    )    Judge Crenshaw / Frensley
CORE CIVIC, INC., et al.,           )
                                    )
       Defendants.                  )

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 70.[1] Along with that Motion, Defendants have contemporaneously filed a supporting Memorandum of Law (Docket No. 71), a Statement of Undisputed Material Facts (Docket No. 79), and the Declarations of James Bridges (Docket No. 72), Desiree Andrews (Docket No. 73), Christi Carter (Docket No. 74), Reggie Hebron (Docket No. 75), Darrell Jones (Docket No. 76), John Rychen (Docket No. 77), and Michael Sowers (Docket No. 78).

Plaintiff has not responded to the instant Motion or to Defendants' Statement of Undisputed Material Facts, nor has he filed his own Statement of Undisputed Material Facts.

Plaintiff filed this pro se, in forma pauperis action alleging that Defendants violated his Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 when they failed to provide him with a bottom bunk assignment, despite knowledge of his hernia. Docket No. 50.

---

[1] Also pending before the Court is Plaintiff's newly-filed Motion to Dismiss, which states in its entirety: "Pursuant to the applicable authority, plaintiff moves this Honorable Court to dismiss this action with prejudice." Docket No. 87 (filed October 10, 2018). Accordingly, all parties seek the termination of this action, with prejudice.

Specifically, Plaintiff avers that he arrived at the Detention Facility on July 12, 2016, when he was interviewed by the intake nurse about his hernias and recent surgery therefor. *Id.* Plaintiff avers that he informed the intake nurse that he had a bottom bunk pass from his previous facility and that he required a bottom bunk at this facility. *Id.* Plaintiff avers that, despite this knowledge, the intake nurse at the Detention Facility did not issue him a bottom bunk pass, nor did she take action to ensure that Plaintiff would be assigned to a bottom bunk. *Id.* Plaintiff avers that, on July 25, 2016, he was assigned a top bunk and was advised that this was because there were no bottom bunks available. *Id.* Plaintiff maintains that he hurt himself trying to climb up to the top bunk and that his injury made his hernias worse. *Id.* Plaintiff further maintains that he reported his injury and his need for a bottom bunk, and he states that he was moved to a bottom bunk the following day. *Id.*

Plaintiff avers that he was issued a bottom bunk pass on August 1, 2016, but that on November 1, 2016, he was moved to a top bunk. *Id.* Plaintiff states that he again complained and reported his need for a bottom bunk, but no one listened. *Id.* Plaintiff avers that on November 8, 2016, he was seen by medical and that the nurse called the count room and told them to move Plaintiff to a bottom bunk, but his move to a bottom bunk was stopped by Defendant Jones. *Id.* Plaintiff reports that he obtained a plastic chair to help him get in and out of the top bunk, but that Defendant Jones took his plastic chair away on or about November 9, 2016. *Id.* Plaintiff states that, several days later, Quality Assurance Manager Aylward was passing out commissary, so Plaintiff brought the bottom bunk issue to his attention and Mr. Aylward got on his radio and took immediate action, instructing the count room to move Plaintiff to a bottom bunk. *Id.* Plaintiff avers that later that same day he was moved to a bottom bunk,

and that during the first week of January 2017, CoreCivic provided for him to have major surgery during which a "mesh" was surgically implanted into Plaintiff's abdominal cavity as part of rebuilding Plaintiff's abdominal wall. *Id.*

Plaintiff maintains that during the times he was assigned to a top bunk, his injuries and hernias got worse and he suffered severe and intense pain. *Id.* Plaintiff additionally avers that CoreCivic has a policy, practice, and/or custom of deliberate indifference towards inmates who need bottom bunks due to medical conditions, and that he was told that the Detention Facility does not accept bottom bunk passes from other facilities. *Id.* Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. *Id.*

As grounds for their Motion, Defendants argue that they are entitled to summary judgment because: (1) Plaintiff did not exhaust his administrative remedies; (2) Plaintiff's claims do not rise to the level of an Eighth Amendment constitutional violation because (a) there is no respondeat superior liability under §1983 and Plaintiff has failed to establish that CoreCivic has an unconstitutional policy, practice, or custom that was the moving force behind the alleged deprivation of his rights, (b) Plaintiff cannot establish that he suffered the requisite physical injury, and (c) the undisputed facts establish that Defendants were not deliberately indifferent; and (3) Plaintiff does not plead factual allegations sufficient to establish an equal protection claim because (a) Plaintiff does not allege that he was treated differently than similarly-situated individuals, (b) Plaintiff failed to negate "every conceivable basis" which might support Defendants' alleged conduct, and (c) Plaintiff fails to demonstrate that the challenged action was motivated by animus or ill-will. Docket No. 70.

As noted, Plaintiff has not responded to the instant Motion or to Defendants' Statement of

Undisputed Material Facts, nor has he filed his own Statement of Undisputed Material Facts.

For the reasons set forth below, the undersigned finds that no genuine issues of material fact exist and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 70) be GRANTED, and that this action be DISMISSED WITH PREJUDICE. The undersigned further recommends that because the medical evidence in this case is filed under Seal, this Report and Recommendation should also be filed under Seal.

## II. Undisputed Facts[2]

**A. Declaration of James Bridges, M.D.**

James Bridges, M.D. is a medical doctor and an employee of CoreCivic, Inc. ("CoreCivic") who oversees the medical care of inmates at various CoreCivic facilities, including the Metro-Davidson County Detention Facility ("Detention Facility") at which Plaintiff is incarcerated, and who served as one of Plaintiff's treating medical providers at all times relevant to this action. Docket No. 72, Declaration of James Bridges, M.D. ("Bridges Dec."), ¶¶ 2, 3, 10.

Certain medical conditions demand a bottom bunk pass for incarcerated individuals as a matter of medical necessity; one such example is paralysis. *Id.*, ¶ 5. An abdominal hernia is not a medical condition that demands a bottom bunk assignment. *Id.* Medical providers may, however, issue a bottom bunk pass to individuals for various medical conditions at the provider's professional discretion. *Id.*

Plaintiff submitted sick call requests on July 28, 2016 and July 31, 2016, neither of which

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

4

mention Plaintiff's hernia or reference any injury from climbing onto a top bunk. *Id.*, ¶ 4, Ex. A. Plaintiff's medical records do not support his allegation that he injured himself while climbing onto a top bunk or that his hernia worsened as a result of his assignment to a top bunk. *Id.*, ¶ 6.

On August 1, 2016, Plaintiff underwent a routine general medical evaluation, as required for all new inmates at the Detention Facility. *Id.*, ¶ 4, Ex. A. During this evaluation, Plaintiff mentioned various health issues, including his hernias and abdominal pain, but the medical records do not reflect any mention by Plaintiff that he suffered an injury when climbing onto the top bunk. *Id.* Also on August 1, 2016, during this evaluation, the treating physician issued Plaintiff a bottom bunk pass effective for one (1) year, until August 1, 2017, to make it easier for Plaintiff to get onto his bunk. *Id.*

On August 5, 2016, Plaintiff refused to see a medical provider. *Id.*

On August 17, 2016, Plaintiff submitted a sick call request that referenced his hernia and the alleged injury related to climbing onto the top bunk. *Id.* Plaintiff received medical care and ultimate underwent abdominal surgery to repair his hernia. *Id.*

Plaintiff's assignment to a top bunk did not cause his hernia to enlarge and did not cause any emergent medical need related to his hernia. *Id.*, ¶ 7. Rather, Plaintiff's medical records reflect that his hernia worsened in a natural progression, not suddenly as a result of any particular injury. *Id.*, ¶ 8. Plaintiff's symptoms related to his hernia are wholly unrelated to his assignment to a top or bottom bunk. *Id.*, ¶ 9. In fact, Plaintiff stated to medical providers that his hernia symptoms began as early as March 2016 and were related to an abdominal surgery he underwent prior to his arrival at the Detention Facility. *Id.*, ¶ 4, Ex. A.

5

### B. Declaration of Desiree Andrews

Desiree Andrews is employed by CoreCivic as the Health Services Administrator at the Detention Facility at which Plaintiff is incarcerated. Docket No. 73, Declaration of Desiree Andrews ("Andrews Dec."), ¶ 2.

CoreCivic's customs require employees to follow medical orders regarding inmates' bunk assignments, to timely respond to medical emergencies, to provide appropriate medical treatment, and to attend to the needs of inmates who require bottom bunks. *Id.*, ¶ 3.

Ms. Andrews did not wrong or harm Plaintiff, nor did any animus or ill-will play any role in her actions, including but not limited to actions affecting Plaintiff's cell or bunk assignments. *Id.*, ¶ 4.

### C. Declaration of Christi Carter

Christi Carter is an employee of CoreCivic at the Detention Facility where Plaintiff is incarcerated. Docket No. 74, Declaration of Christi Carter ("Carter Dec."), ¶ 2.

CoreCivic's customs require employees to follow medical orders regarding inmates' bunk assignments, to timely respond to medical emergencies, to provide appropriate medical treatment, and to attend to the needs of inmates who require bottom bunks. *Id.*, ¶ 3.

Ms. Carter did not wrong or harm Plaintiff, nor did any animus or ill-will play any role in her actions, including but not limited to actions affecting Plaintiff's cell or bunk assignments. *Id.*, ¶ 4.

### D. Declaration of Reggie Hebron

Reggie Hebron is an employee of CoreCivic at the Detention Facility where Plaintiff is incarcerated. Docket No. 75, Declaration of Reggie Hebron ("Hebron Dec."), ¶ 2.

CoreCivic's customs require employees to follow medical orders regarding inmates' bunk assignments, to timely respond to medical emergencies, to provide appropriate medical treatment, and to attend to the needs of inmates who require bottom bunks. *Id.*, ¶ 3.

Mr. Hebron did not wrong or harm Plaintiff, nor did any animus or ill-will play any role in his actions, including but not limited to actions affecting Plaintiff's cell or bunk assignments. *Id.*, ¶ 4.

### E. Declaration of Darrell Jones

Darrell Jones is employed by CoreCivic as the Unit Manager of the Detention Facility where Plaintiff is incarcerated. Docket No. 76, Declaration of Darrell Jones ("Jones Dec."), ¶ 2.

Upon Plaintiff's arrival at the Detention Facility on July 12, 2016, he was assigned to a top bunk in the intake housing unit. *Id.*, ¶ 3. This assignment was an administrative decision supported by valid penological concerns, pursuant to CoreCivic's inmate intake procedures and policies. *Id.* On July 25, 2016, Plaintiff was assigned a top bunk in Unit K. *Id.*, ¶ 4. On July 27, 2016, Plaintiff was assigned a bottom bunk in Unit K. *Id.*, ¶ 5.

Soon after Plaintiff's arrival at the Detention Facility, Plaintiff entered the Residential Drug Assistance Program ("RDAP"). *Id.*, ¶ 6. Inmates participating in RDAP live in a separate housing unit from the general prison population. *Id.*

On September 13, 2016, the day Plaintiff was discharged from RDAP for disruptive behavior, Plaintiff had a bottom bunk assignment in the RDAP housing unit. *Id.*, ¶ 7. Plaintiff was informed that no bottom bunks were available outside the RDAP housing unit. *Id.* Plaintiff chose not to return to RDAP and instead elected to accept a top bunk assignment in a general population housing unit. *Id.*

On September 13, 2016, Plaintiff was assigned a top bunk in Unit H. *Id.*, ¶ 8. On November 1, 2016, Plaintiff was assigned a top bunk in Unit L. *Id.*, ¶ 9. On November 11, 2016, Plaintiff was assigned a bottom bunk in Unit L. *Id.*, ¶ 10.

At the Detention Facility, there are several factors that contribute to the determination of inmate cell and bunk assignments, including but not limited to the number of medically-required bottom bunk passes, the availability of bottom bunks, the safety and compatibility of inmates as it pertains to joint cell assignments, and other related factors. *Id.*, ¶ 11.

CoreCivic's customs require employees to follow medical orders regarding inmates' bunk assignments, to timely respond to medical emergencies, to provide appropriate medical treatment, and to attend to the needs of inmates who require bottom bunks. *Id.*, ¶ 12.

Mr. Jones did not wrong or harm Plaintiff, nor did any animus or ill-will play any role in his actions, including but not limited to actions affecting Plaintiff's cell or bunk assignments. *Id.*, ¶ 13.

**F. Declaration of John Rychen**

John Rychen is employed by CoreCivic as the Assistant Warden of the Detention Facility where Plaintiff is incarcerated. Docket No. 77, Declaration of John Rychen ("Rychen Dec."), ¶ 2.

CoreCivic has an administrative grievance system that provides a procedure for inmates to seek redress for issues related to the conditions of confinement. *Id.*, ¶ 6. Policy 14-05 is the Inmate/ Resident Grievance Procedure. *Id.* Policy 14-05 provides that, within seven (7) days of becoming aware of a specific grievable issue, the inmate must file an informal resolution, which will be responded to within fifteen (15) days of receipt by a department-level supervisor or other

8

appropriate official. *Id.*, Ex. B. If the inmate is dissatisfied with the response to the informal resolution, the inmate must file a formal grievance within five (5) days. *Id.* The grievance officer must respond to the formal grievance within fifteen (15) days of receipt. *Id.* If the inmate is dissatisfied with the response to the formal grievance, the inmate must file a grievance appeal within five (5) days. *Id.* The warden must respond to the grievance appeal within fifteen (15) days of receipt. *Id.* The response of the warden is final, and thus exhausts administrative remedies. *Id.*

Plaintiff filed five (5) substantially-similar informal resolutions on July 27, 2016 regarding the top bunk assignment he initially received upon intake on July 12, 2016. *Id.*, ¶ 3, Ex. A. Plaintiff's informal resolutions complained that: (1) the Detention Facility did not honor the bottom bunk pass from his previous facility; (2) the intake nurse failed to assign him a bottom bunk; (3) the Detention Facility staff members refused to move him to a bottom bunk upon request; and (4) the Detention Facility failed to respond to his sick calls regarding the alleged injuries suffered from climbing onto the top bunk. *Id.* Appropriate Detention Facility staff responded to each of Plaintiff's informal resolutions, noting, *inter alia*, that Plaintiff's issue was non-grievable because it was not filed within the seven (7) days provided for under the grievance policy. *Id.* The informal resolution decision was finalized on September 2, 2016. *Id.*

On September 4, 2016, Plaintiff filed a formal grievance pertaining to the same issues. *Id.* Grievance Number 91605 is the only formal grievance Plaintiff filed relevant to the allegations raised in this action. *Id.*, ¶ 5. On September 19, 2016, appropriate Detention Facility staff responded, again noting that the issue was non-grievable. *Id.* Plaintiff never appealed Grievance Number 91605. *Id.*

Plaintiff did not file an informal resolution or a formal grievance to submit a complaint about his top bunk assignment from November 1, 2016 to November 11, 2016. *Id.*, ¶ 4.

CoreCivic's customs require employees to follow medical orders regarding inmates' bunk assignments, to timely respond to medical emergencies, to provide appropriate medical treatment, and to attend to the needs of inmates who require bottom bunks. *Id.*, ¶ 8.

Mr. Rychen did not wrong or harm Plaintiff, nor did any animus or ill-will play any role in his actions, including but not limited to actions affecting Plaintiff's cell or bunk assignments. *Id.*, ¶ 9.

### G. Declaration of Michael Sowers

Michael Sowers is an employee of CoreCivic at the Detention Facility where Plaintiff is incarcerated. Docket No. 78, Declaration of Michael Sowers ("Sowers Dec."), ¶ 2.

CoreCivic's customs require employees to follow medical orders regarding inmates' bunk assignments, to timely respond to medical emergencies, to provide appropriate medical treatment, and to attend to the needs of inmates who require bottom bunks. *Id.*, ¶ 3.

Mr. Sowers did not wrong or harm Plaintiff, nor did any animus or ill-will play any role in his actions, including but not limited to actions affecting Plaintiff's cell or bunk assignments. *Id.*, ¶ 4.

### III. Law and Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except,

that in cases of a motion for summary judgment, that time shall be
twenty-one (21) days after the service of the motion, unless
otherwise ordered by the Court. Failure to file a timely response
shall indicate that there is no opposition to the motion.

Defendants filed the instant Motion on August 9, 2018. Docket No. 70. Plaintiff has failed to respond to Defendants' Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendants' Statement of Undisputed Material Facts or file his own Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir.

1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise,

must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

### C. 42 U.S.C. § 1983

Plaintiff alleges that Defendants violated his constitutional rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 50. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,*

13

436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**D. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e**

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply

14

> . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court.

> Prisons need to know about and address claims of excessive force
> as they would any other claim concerning prison life so that steps
> may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity
> and improve the quality of prisoner suits; to this purpose, Congress
> afforded corrections officials time and opportunity to address
> complaints internally before allowing the initiation of a federal
> case. In some instances, corrective action taken in response to an
> inmate's grievance might improve prison administration and satisfy
> the inmate, thereby obviating the need for litigation. . . . In other
> instances, the internal review might "filter out some frivolous
> claims." . . . And for cases ultimately brought to court, adjudication
> could be facilitated by an administrative record that clarifies the
> contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion
> requirement applies to all inmate suits about prison life, whether they
> involve general circumstances or particular episodes, and whether
> they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

### E. The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

The undisputed facts establish, *inter alia*, Plaintiff has failed to exhaust his administrative

remedies because CoreCivic has a grievance system that provided Plaintiff with a procedure to seek redress for issues related to his conditions of confinement, but he did not appeal the informal resolutions and grievances he filed related to his July 2016 top bunk assignment, and he did not file (much less appeal) any informal resolutions or grievances related to his November 2016 bunk assignment. *See, e.g.,* Rychen Dec., ¶¶ 3-6, Ex. B.

Moreover, the undisputed facts establish that Defendants were not deliberately indifferent to his serious medical need because: (1) an abdominal hernia is not a medical condition that demands a bottom bunk assignment; (2) Plaintiff's medical records do not support his allegation that he injured himself while climbing onto a top bunk or that his hernia worsened as a result of his assignment to a top bunk; and (3) Plaintiff received medical treatment and ultimately received abdominal surgery to repair his hernia. *See, e.g.,* Bridges Dec., ¶¶ 5, 6, 7; Ex. A.

The undisputed facts also establish that Plaintiff never alleged that other similarly-situated inmates were treated differently than he. *See* the record, *passim.*

Additionally, Plaintiff cannot establish that CoreCivic had an official policy, practice, or custom that caused him constitutional injury because the undisputed facts demonstrate that CoreCivic requires employees to follow medical orders regarding inmates' bunk assignments, to timely respond to medical emergencies, to provide appropriate medical treatment, and to attend to the needs of inmates who require bottom bunks. Andrews Dec., ¶ 3; Carter Dec., ¶ 3; Hebron Dec., ¶ 3; Jones Dec., ¶ 12; Rychen Dec., ¶ 8.

Finally, it is undisputed that Defendants did not wrong, harm, or otherwise act with any animus or ill-will toward Plaintiff. *See, e.g.,* Andrews Dec., ¶ 4; Carter Dec., ¶ 4; Hebron Dec., ¶ 4; Jones Dec., ¶ 13; Rychen Dec., ¶ 9; Sowers Dec., ¶ 4.

## IV. Conclusion

For the reasons set forth above, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as required under the PLRA. The undersigned further finds that the undisputed facts demonstrate that Defendants did not violate Plaintiff's constitutional rights, such that Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 70) be GRANTED, and that this action be DISMISSED WITH PREJUDICE. The undersigned further recommends that because the medical evidence in this case is filed under Seal, this Report and Recommendation should also be filed under Seal.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                                                                        _____
                                                                                        JEFFERY S. FRENSLEY
                                                                                        United States Magistrate Judge